■ ALTHEA GEGERSON, Respondent, v. NORTHERN OPERATING CORP., Respondent, and THE PEOPLE OF THE STATE OF NEW YORK et al., Defendants. 202–306 CORP., Appellant.— In an action to foreclose a mortgage on real property, in which a judgment of foreclosure and sale had been entered, and a judicial sale pursuant to the judgment held on June 7, 1972, the purchaser at the sale appeals from an order of the Supreme Court, Rockland County, dated September 15, 1972, which granted the separate motions of plaintiff and of defendant Northern Operating Corp. to set aside the sale. Order reversed, with one bill of $20 costs and disbursements against plaintiff and said defendant jointly, and motions denied. The judgment of foreclosure, dated September 15, 1966, ordered plaintiff to proceed with the sale of 54 acres of the property of defendant Northern Operating Corp. located in the Village of Pomona, Rockland County. Northern owed plaintiff $86,000 at the time. The sale was held up for approximately four years by a stay issued in bankruptcy proceedings, which stay was vacated in 1970. In September, 1971 plaintiff's attorney prepared and arranged for the publication of the notice of sale in two newspapers and furnished sufficient copies of the notice for posting both in the Village of Pomona and in New City, where the sale was to take place (see Real Property Actions and Proceedings Law, § 231, subd. 2). Four days before the scheduled date for the sale, however, the sale was stayed by an order to show cause obtained by Northern's controlling stockholder seeking to prevent the sale for alleged deficiencies in the notice. The relief sought was denied and the stay vacated. Plaintiff republished and reposted the notice of sale for December 26, 1971, but again four days before that date the sale was stayed by an order to show cause and again the underlying request for relief was denied. New advertising and posting arrangements were made in anticipation of an April 28, 1972 sale date, but this time, on or about April 25, 1972, Northern contacted plaintiff and requested a month's adjournment on the ground that it was making arrangements for payment of all sums due plaintiff. At that time, the amount owed was about $140,000, which included interest accrued and real estate taxes paid since 1966. Plaintiff agreed to the adjournment on condition that Northern and its sole stockholder and president, Edwin C. Stokes, execute an agreement waiving their rights to attack the sale. This agreement, signed on April 26, 1972, inter alia, contained the following: "3. Stokes and Northern Operating Corp. covenant and agree that in consideration of the

extension of time of the date of said foreclosure sale that they will not directly or collaterally: (a) Bring any action or proceeding including by way of illustration and not by way of limitation any provisional remedy or any motion for a provisional remedy in any Court of law to attempt to postpone, delay or set aside any foreclosure sale directed in said Judgment of Foreclosure and Sale or seek to vacate, dismiss, challenge the validity of, or move against the proposed sale consummated thereunder or to challenge the validity, regularity, propriety of any advertisement or notice of sale of the premises to be held in the future pursuant to the Judgment of Foreclosure and Sale dated September 15, 1966." The new sale date was set for June 7, 1972. Early on that day, however, Northern sought an adjournment and obtained an order to show cause containing a stay of the sale. The objection to the sale was apparently for alleged improper posting of the notice of sale. The order to show cause was returnable June 12, 1972, but shortly after it was signed plaintiff's counsel appeared before the Justice who had signed the order and advised him that notice of the sale had been properly posted and called the attention of the Justice to the agreement not to seek further adjournments which had been signed by both parties. The Justice changed the return date of the order to 10:00 A.M. that morning (June 7) and immediately heard oral argument by both sides. Thereafter, finding that the agreement precluded Northern from making any further applications to adjourn, the court orally directed the sale to proceed. Appellant was the highest bidder, purchasing the property for $270,000. The show cause order of June 7 contained a provision staying the sale set for that day "until a Notice of Entry of the ORDER determining this Motion be served upon the Defendant's attorney." No order was entered until August 1, 1972. We are of the opinion, however, that the court's oral direction to conduct the sale, made after oral argument, modified the ex parte order which it had signed, so as to effectively vacate the stay therein. CPLR 2003 provides that at any time within one year after a judicial sale, the court may set the sale aside "for a failure to comply with the requirements of the civil practice law and rules as to the notice, time or manner of such sale, if a substantial right of a party was prejudiced by * * * [a] defect." From this we conclude that any alleged defect that might have occurred in this case with respect to posting was a mere irregularity and not a jurisdictional defect (see *Criterion Capital Corp.* v. *Valven Holding Corp.*, 23 A D 2d 878; *Schnall* v. *Sayville Manor & Beach Club*, 12 Misc 2d 274, 275). This conclusion is not weakened by the fact that CPLR 2003 makes no reference to the Real Property Actions and Proceedings Law. We deem it applicable to the latter (see New York State Legislative Annual, 1964, pp. 18–20; see, also, 13 Carmody-Wait 2d, New York Practice, p. 565). Being a mere irregularity, we find that such a defect can be waived by the parties and that Northern did, in fact, make such a waiver when it executed the agreement of April 26, 1972. As for plaintiff, her attempt to set aside the sale is specious. Besides the fact that she had joined in executing the April 26 agreement, her attorney assured the court hearing argument just prior to the sale on June 7, 1972 that he had satisfied the posting requirements. He should not be heard to claim otherwise now. Additionally, there has been no real showing of prejudice to either party. As for plaintiff, she concedes as much in an affirmation by her attorney at Special Term in which it is stated that "plaintiff has *no interest* as to who will be the eventual purchaser of the property so long as plaintiff's lien is satisfied in full". That was done. As for Northern, the proceeds of the sale produced far in excess of the amount of the outstanding lien, a fact which belies any claim that the alleged irregularity adversely affected the sale. Clearly,

there is no proof the sale produced an unconscionably low price (see 13 Carmody-Wait 2d, New York Practice, p. 590). The sale, already delayed almost seven years, should be upheld. Munder, Martuscello and Shapiro, JJ., concur; Rabin, P. J., and Hopkins, J., dissent and vote to affirm.